IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PACIFIC CYCLE, INC. *et al.*,          *
                                        *
          Plaintiffs/                   *
          Counter-Defendants,           *
                                        *
     vs.                                *          Civil Action No.   ADC-18-3722
                                        *
APOLLO RETAIL SPECIALISTS, LLC,         *
                                        *
          Defendant/                    *
          Counter-Plaintiff.            *
                                        *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Defendant/Counter-Plaintiff Apollo Retail Specialists, LLC ("Apollo") moves this Court for partial summary judgment ("Apollo's Motion") (ECF No. 37). Apollo seeks a declaration from this Court that if it is ultimately found to be a joint tortfeasor in the underlying action, its pro rata contribution share would be capped at twenty percent of the settlement amount. Plaintiffs/Counter-Defendants Pacific Cycle, Inc., South China Insurance Co., Ltd., Taiwan Fire & Marine Insurance Co. Ltd., and The First Insurance Co., Ltd. (collectively "Plaintiffs") filed an opposition to Apollo's Motion and a cross-motion for summary judgment ("Plaintiffs' Cross-Motion") (ECF No. 41). Plaintiffs seek a declaration from this Court that if Apollo is found to be a joint tortfeasor, its pro rata contribution share would be fifty percent of the settlement amount.

After considering both Motions and the responses thereto, the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2018). In addition, having reviewed the pleadings of record and all competent and admissible evidence submitted by the parties, the Court finds there are no genuine issues of material fact as to any of the parties' arguments. Accordingly, the Court will GRANT Apollo's Motion (ECF No. 37) and will DENY Plaintiffs' Cross-Motion (ECF No. 41).

## FACTUAL BACKGROUND

On or about November 29, 2013, John Klein took possession of a bicycle he had purchased from Sears, Roebuck and Co. ("Sears"). ECF No. 1 at 5, ¶ 16. On December 11, 2013, Mr. Klein was riding the bicycle in Anne Arundel County, Maryland when the left crank arm detached from the bottom bracket/spindle, and Mr. Klein fell off the bicycle. *Id.* at 5, ¶¶ 17–18. While Mr. Klein was on the ground after falling, a vehicle driving lawfully was unable to avoid him and ran over his right leg, causing serious injuries. *Id.* at 5, ¶ 19.

Before Mr. Klein bought the bicycle from Sears, Pacific Cycle, Inc. ("Pacific Cycle"), a Wisconsin company that markets and distributes bicycles, had contracted with Ming Cycle Industrial Co. Ltd. ("Ming Cycle") and/or Yong Qi Bicycle Industrial Co. Ltd. ("Yong Qi") for manufacture and partial assembly of the subject bicycle in China. *Id.* at 2, 4, ¶¶ 1, 9, 11. After partial assembly, Pacific Cycle took possession of the bicycle and shipped it to a warehouse in the United States before shipping it to Sears. *Id.* at 4, ¶¶ 12–13. Apollo was the in-store final assembler for Sears, and it performed a final assembly and inspection of the bicycle. *Id.* at 4, ¶ 15.

On December 8, 2016, Mr. Klein filed a Complaint in the Circuit Court for Anne Arundel County, Maryland against Pacific Cycle, Apollo, and Sears stemming from his December 11, 2013 injuries (the "underlying action"). ECF No. 37 at 1. On November 8, 2017, Mr. Klein dismissed both Apollo and Sears from the underlying action without consideration. *Id.* On August 6, 2018, Mr. Klein entered a Joint Tortfeasor Release Agreement (the "Agreement") with Pacific Cycle, Ming Cycle, and Yong Qi to settle the underlying action. *Id.* at 2; ECF No. 37-1 at 1. The Agreement explicitly releases from liability to Mr. Klein "any person or entity involved in the manufacture, design, testing, sale, inspection, or distribution of the bicycle involved in the accident," including Pacific Cycle, Ming Cycle, Yong Qi, Sears, and Apollo. ECF No. 37-1 at 1.

Furthermore, the Agreement specifically defines Pacific Cycle, Ming Cycle, Yong Qi, and Sears as joint tortfeasors. *Id.* at 3, ¶ 9 ("Pacific Cycle, [Sears], Yong Qi (Chang Zhou) and Ming Cycle, through their insurers, acknowledge their status as joint tortfeasors"). The Agreement alleges that Apollo is also a joint tortfeasor, and allows the other parties to seek contribution from Apollo under the Maryland Uniform Contribution Among Joint Tort-Feasors Act ("MUCAJTFA"), MD. CODE, CTS. & JUD. PROC. §§ 3-1401 *et seq. Id.* ("[Mr. Klein], Pacific Cycle, [Sears], Yong Qi (Chang Zhou), Ming Cycle and its insurers expressly state that there is a common liability in tort to [Mr. Klein] on the part of Pacific Cycle, [Sears], Yong Qi (Chang Zhou), Ming Cycle and Apollo Retail Specialists, LLC.").

## PROCEDURAL BACKGROUND

On December 3, 2018, Plaintiffs filed the Complaint in this Court against Apollo, seeking contribution and indemnification as well as alleging spoliation of evidence. ECF No. 1.[1] Apollo filed an Answer on December 16, 2018. ECF No. 3.[2] After some discovery had occurred, Apollo filed a Counterclaim for Declaratory Judgment against Plaintiffs on November 15, 2019. ECF No. 35. Plaintiffs filed an Answer to the Counterclaim on December 10, 2019. ECF No. 36.

On December 27, 2019, Apollo filed a Motion for Partial Summary Judgment, seeking a declaration that if Apollo is ultimately adjudged to be a joint tortfeasor, its liability will not exceed twenty percent of the settlement amount, as it would be one of five joint tortfeasors. ECF No. 37. On January 24, 2020, Plaintiffs filed a Response and a Cross-Motion for Partial Summary

---

[1] Plaintiffs filed a First Amended Complaint on February 8, 2019, but it merely corrected a technical error and did not alter the substance of the arguments. *See* ECF Nos. 13, 16.

[2] On February 11, 2019, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of all parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings. ECF No. 17.

Judgment, seeking a declaration that Apollo's potential contribution liability for the settlement amount is fifty percent. ECF No. 41. On February 8, 2020, Apollo filed a Response to Plaintiff's motion. ECF No. 46. This matter is now fully briefed, and the Court has reviewed both parties' Motion and the responses thereto. For the following reasons, the Court GRANTS Apollo's Motion (ECF No. 37) and DENIES Plaintiffs' Motion (ECF No. 41).

### DISCUSSION

### A.  Standard of Review

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The Supreme Court has clarified that not every factual dispute will defeat a motion for summary judgment but rather, there must be a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphases in original)). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome. *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). On the other hand, if after the court has drawn all reasonable inferences in favor of the nonmoving party, "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

The party seeking summary judgment bears the initial burden of either establishing that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. *Celotex Corp.*, 477 U.S. at 322–24. Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In order to meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)).

Here, both parties moved for summary judgment. "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," and in considering each motion "the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citations and internal quotation marks omitted); *see also United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) ("On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion."). At the same time, the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). The fact that both sides moved for summary judgment "neither establish[es] the propriety of deciding a case on summary judgment nor establish[es] that there is no issue of fact requiring that summary judgment be granted to one side or another." *Cont'l Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d 499, 511 n.7 (4th Cir. 2002) (internal citations and quotation marks

omitted). "The court must deny both motions if it finds there is a genuine dispute of material fact, 'but if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment.'" *Rashid v. Wash. Metro. Area Transit Auth.*, No. DKC 17-0726, 2018 WL 1425978, at *4 (D.Md. Mar. 22, 2018) (citation omitted).

## B. Apollo's Motion for Summary Judgment

In its Motion, Apollo requests this Court declare: (1) that Pacific Cycle, Sears, Ming Cycle, and Yong Qi are joint tortfeasors of the claims brought by Mr. Klein in the underlying action for purposes of the Agreement; (2) if Apollo is ultimately found to be a tortfeasor of Mr. Klein's claims, it will be the fifth joint tortfeasor; and (3) if Apollo is found to be a joint tortfeasor, it will only be obligated to contribute twenty percent of Mr. Klein's settlement amount. ECF No. 37 at 2. Apollo argues that based on the express language of the Agreement, Pacific Cycle, Sears, Ming Cycle, and Yong Qi are four separate joint tortfeasors, and under Maryland law, joint tortfeasors share liability on a pro rata basis. *Id.* at 2–3. Because there are already four joint tortfeasors, Apollo argues if it is found to also be a joint tortfeasor, it will be the fifth and will therefore be liable for a pro rata contribution of twenty percent. *Id.* at 5. Apollo is not asking the Court to decide whether it is actually liable as a joint tortfeasor at this time.

## C. Plaintiffs' Cross-Motion for Summary Judgment

Conversely, in their Cross-Motion, Plaintiffs request the Court declare that if Apollo is found to be a joint tortfeasor, it will be obligated to contribute fifty percent of Mr. Klein's settlement amount as one of only two joint tortfeasors. ECF No. 41 at 3.

First, Plaintiffs argue that Ming Cycle and Yong Qi are not separate entities; rather, they are one entity that is identified by Yong Qi in China and by Ming Cycle in the United States. *Id.* at 3, 7–8. If Ming Cycle and Yong Qi are one entity, Plaintiffs argue that they would make up only

one pro rata share. Plaintiffs also argue, however, that Ming Cycle and Yong Qi are not joint tortfeasors at all for determining pro rata shares, because they were not parties to the underlying suit. *Id.* at 7–8. Plaintiffs base this argument on the Maryland Court of Appeals case *Hashmi v. Bennett*, 416 Md. 707 (2010), which they allege "unequivocally" stands for the proposition that only a party to an underlying action may be deemed a joint tortfeasor for contribution purposes. ECF No. 41 at 5, 8.

Next, Plaintiffs argue that Sears should not be considered a separate joint tortfeasor, but rather it should be combined with either Pacific Cycle's or Apollo's pro rata share. *Id.* at 8. Plaintiffs argue that because Sears was only the retailer of the bicycle, its liability is "derivative of either Pacific Cycle's (as manufacturer) or Apollo's (as assembler)." *Id.* at 8–9. Plaintiffs base this argument on the Maryland Court of Appeals case *Chilcote v. Von Der Ahe Van Lines*, 300 Md. 106 (1984), which they allege "specifically noted that a manufacturer and retailer should be assigned one contribution share." ECF No. 41 at 6. If Sears' liability was combined with either Pacific Cycle's or Apollo's, and if Ming Cycle and Yong Qi are not joint tortfeasors, there would only be two pro rata shares total. Based on both arguments, Plaintiffs contend that Apollo's pro rata contribution to the settlement amount is fifty percent. *Id.* at 9–10.

In its Response to Plaintiffs' Cross-Motion,[3] Apollo disagrees with Plaintiffs' construction of *Hashmi* and *Chilcote* while also arguing both cases are distinguishable from the matter at hand. ECF No. 46 at 2–3, 6–7. Apollo also disputes that Ming Cycle and Yong Qi are one entity, and argues that the language of the Agreement specifies that Pacific Cycle, Sears, Ming Cycle, and Yong Qi are four separate joint tortfeasors. *Id.* at 1–2, 4.

---

[3] In its Response, Apollo addresses Counts II and III of Plaintiffs' Complaint, arguing they are not viable. ECF No. 46 at 5. As Apollo acknowledges, however, it did not challenge Counts II and III in its original Motion, and the Court will not consider those claims here. *See id.*

**D. Analysis**

*1. The Maryland Uniform Contribution Among Joint Tort-Feasors Act*

In Maryland, "[t]he equitable doctrine of contribution provides 'for the distribution of loss among culpable parties in accordance with their proportionate shares.'" *Brown v. Houff Transfer, Inc.*, No. TJS-18-2205, 2020 WL 673294, at *5 (D.Md. Feb. 11, 2020) (quoting *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship*, 109 Md.App. 217, 280 (1996), *aff'd*, 346 Md. 122 (1997)). The MUCAJTFA provides the right of contribution among joint tortfeasors. *See* Md. Code, Cts. & Jud. Proc. § 3-1402. When one tortfeasor enters a release with an injured party that does not include all tortfeasors, the release

> does not discharge the other tort-feasors unless the release so provides, but it reduces the claim against the other tort-feasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.

*Id.* at § 3-1404. Furthermore, "it is only when one joint tort-feasor discharges the common liability or pays more than a pro rata share of liability that the right to pursue contribution, in the form of a money judgment, accrues[.]" *Mercy Med. Ctr. v. Julian*, 429 Md. 348, 357 (2012). "'Pro rata' anticipates equal shares that are determined by dividing the common liability by the number of joint tort-feasors." *Id.* (citing *Hashmi*, 416 Md. at 719 n.13 (2010)).

In interpreting and applying the MUCAJTFA, the Maryland Court of Appeals' jurisprudence "provides that a party may qualify as a joint tort-feasor only by either having been adjudicated as liable, or having conceded or admitted liability, as a tort-feasor." *Id.* at 356. Here, notably, Apollo has neither been adjudged a joint tortfeasor nor conceded liability. Apollo, however, is not asking the Court in its Motion to decide whether it is ultimately a joint tortfeasor; rather, it is only asking that the Court declare what its pro rata contribution share would be if it is

later found liable as a joint tortfeasor. For the purpose of this analysis, the Court will proceed as if Apollo has a duty of contribution only to determine its potential pro rata share.

       2.   *Apollo Would Be the Fifth Joint Tortfeasor if Found Liable.*

Whether Apollo's potential pro rata share is twenty percent or fifty percent depends solely on the number of joint tortfeasors in the underlying action. *See Mercy Med.*, 429 Md. at 357.

       a.   The Plaintiffs Misapply *Hashmi v. Bennett*.

The first of two cases upon which Plaintiffs rely in their Cross-Motion is *Hashmi v. Bennett*, 416 Md. 707 (2010). In *Hashmi*, the Bennetts filed a survival and wrongful death action stemming from the death of Adrian Bennett against Shoaib A. Hashmi, M.D., and The Good Samaritan Hospital of Maryland, among other parties. *Id.* at 710. Before trial, the Bennetts dismissed Good Samaritan Hospital from the case as a result of a "Joint Tortfeasor Release." *Id.* at 714. The Release specified it only applied to Good Samaritan Hospital, provided full settlement and discharge of the claims against it, and included "any partner, agent (actual or apparent), servant, employee, consultant, staff, or representative" of the Hospital other than Dr. Hashmi. *Id.* at 715. The Release also provided that the if the Bennetts ultimately obtained judgment against a non-released party, that judgment would be reduced either by "the pro rata shares of the Released Party or the amount paid for this Settlement Agreement, whichever is greater," pursuant to the MUCAJTFA. *Id.* at 716 (emphasis omitted). Dr. Hashmi did not settle his claims with the Bennetts, and judgment was entered against him following a jury trial. *Id.* at 716–17. After the judgment was entered, Dr. Hashmi filed both a motion for remittitur and an accompanying memorandum, in which he asserted he was entitled to contribution from Good Samaritan Hospital (as well as other parties released before trial) and also from three individual Good Samaritan employees: Dr. Hina Sahi, Nurse Kathleen Bosse, and an unidentified emergency room nurse, referred to as Nurse A.

*Id.* at 717–19. The Bennetts objected to the reduction of their verdict by three additional "shares," contending the three new alleged tortfeasors "were never named as defendants, never admitted liability to Plaintiffs," and were already released as employees under the Good Samaritan Release, which contemplated only one joint tortfeasor share. *Id.* at 719–20. The trial judge did not accept Dr. Hashmi's allegation that the three employees represented three additional pro rata shares, and Dr. Hashmi appealed. *Id.* at 720. The Maryland Court of Special Appeals found "the language of the Good Samaritan Release clearly and unambiguously identified Good Samaritan Hospital as the joint tort-feasor and that 'Dr. Sahi, Nurse Bosse, and Nurse A, as non-parties to the settlement agreement, could not attain joint tortfeasor status.'" *Id.*

The Maryland Court of Appeals affirmed. In so affirming, the Court of Appeals relied on basic contract interpretation. *Id.* at 723 (citing *Owens-Illinois, Inc. v. Cook*, 386 Md. 468, 496 (2005)). The Court of Appeals stated,

> "Under the objective law of contract interpretation, the court will give force and effect to the words of the contract without regard to what the parties to the contract thought it meant or what they intended it to mean." Our task when interpreting contracts is to "[d]etermine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated."

*Id.* (first quoting *Langston v. Langston*, 366 Md. 490, 507 (2001), then quoting *Calomiris v. Woods*, 353 Md. 425, 436 (1999)). The Court of Appeals, like the Court of Special Appeals, determined that the Release identified Good Samaritan Hospital, the "Released Party," as a "Joint Tortfeasor" in such a way that "the Release broadly encompasses hospital employees and agents, while nevertheless representing one joint tort-feasor share." *Id.* at 724. Furthermore, the Court of Appeals held that none of the three Hospital employees were named as defendants in the original action, nor did Dr. Hashmi seek to joint them as parties, and therefore their liability as separate joint tortfeasors was never adjudicated. *Id.* at 725–26. The Court of Appeals concluded that Dr.

Hashmi could have pursued a claim against other alleged joint tortfeasors by filing a third-party complaint and by seeking a special verdict, instead of by attempting to pursue these claims post-verdict. *Id.* at 731.

In the instant matter, Plaintiffs allege in *Hashmi* "the court unequivocally found that only a party to an action may be deemed a joint tortfeasor," and therefore Ming Cycle and Yong Qi cannot be joint tortfeasors. ECF No. 41 at 5 (internal quotations omitted). Not so. In *Hashmi*, Dr. Hashmi attempted to obtain a court declaration *after* a jury verdict that three additional individuals were joint tortfeasors without their potential liability being adjudicated or admitted. *See Mercy Med.*, 429 Md. at 356 ("a party may qualify as a joint tort-feasor only by either having been adjudicated as liable, or having conceded or admitted liability, as a joint tort-feasor"). Furthermore, in *Hashmi*, the Court of Appeals relied on contract interpretation to conclude that the three individual employees were encompassed by their employer's release agreement with the plaintiffs. *Hashmi* did not declare "unequivocally" that a joint tortfeasor must have been a party to the underlying action; rather, it disallowed a defendant from using post-verdict modification procedures to add three additional parties to dilute his own pro rata share of the verdict. Accordingly, Plaintiffs' argument that *Hashmi* prevents Ming Cycle and Yong Qi from being joint tortfeasors for the purpose of determining the number of pro rata contribution shares solely because they were not parties to the underlying action is incorrect.

      b.  *Chilcote v. Von Der Ahe Van Lines* is Not Applicable to This Matter.

The second case on which Plaintiffs rely in their Cross-Motion is *Chilcote v. Von Der Ahe Van Lines*, 300 Md. 106 (1984). *Chilcote* arose from a three-vehicle collision among  (1) the plaintiffs, the Chilcotes; (2) defendant Eiber Vincent, who was driving a car owned by his employer, defendant Von Der Ahe Van Lines ("Van Lines"); and (3) Amos Webb, who settled

with plaintiffs before trial. *Id.* at 109. The release Webb signed with Plaintiffs provided Plaintiffs'

right to recover damages from Vincent and Van Lines would be reduced by the extent of Webb's

pro rata share. After a jury found both Vincent and Webb—but not Van Lines—proximately

caused the accident, the trial court reduced the verdict by fifty percent, representing Webb's share.

*Id.* The Maryland Court of Appeals addressed as one of two questions how a pro rata share "'is

calculated when one of the non-released defendants is vicariously liable only,'" as the parties

disagreed whether Webb's pro rata share was one half or one third. *Id.* at 110.

In its analysis, the court pointed to a Maryland Court of Special Appeals' case, *Lahocki v.*

*Contee Sand & Gravel Co.*, 41 Md.App. 579 (1979), which held where "there was no agency

relationship between any of the tortfeasors, . . . the 'pro rata share' referred to in the release meant,

as a matter of that contract's interpretation, a numerical share based upon the number of

tortfeasors." *Chilcote*, 300 Md. at 112. Ultimately, the Court of Appeals held that because Van

Lines' only liability was vicarious based on the actions of its employee, "the liabilities of Van

Lines and Vincent to the Plaintiffs constitute[d] one pro rata share for the purposes of the reduction

of the verdict." *Id.* at 122.

Here, Plaintiffs allege the court in *Chilcote* "specifically noted that a manufacturer and

retailer should be assigned one contribution share." ECF No. 41 at 6. This is inaccurate. Plaintiffs

derive this allegation from a single sentence taken out of context from a section of the *Chilcote*

opinion in which the court relayed a variety of holdings from cases in other states that did not

concern Maryland law. *See Chilcote*, 300 Md. at 119–20 ("The Supreme Court of New Mexico in

a strict liability in tort case has treated the primarily liable manufacturer and the secondarily liable

retailer as one share under the 1939 Model Act." (citing *Aalco Mfg. Co. v. Espanola*, 95 N.M. 66

(1980))). This single sentence was neither relevant to the court's ultimate holding nor had any

basis in Maryland law. As the Court of Special Appeals later noted, "The holding in *Chilcote* was clear. If Van Lines had been considered a joint tortfeasor, then it necessarily would have been assessed one-third of the liability, separate from its agent, rather than being considered a single entity in combination with its agent." *Anne Arundel Md. Ctr., Inc. v. Condon*, 102 Md.App. 408, 419 (1994).

*Chilcote* concerned determining the number of pro rata shares (1) when an agency relationship was present between at least two parties, and (2) one of the parties was only vicariously liable and not a joint tortfeasor. Plaintiffs argue that, based on *Chilcote*, Sears' pro rata share should be combined with either Pacific Cycle's or Apollo's because its liability "was derivative" as merely the retailer. ECF No. 41 at 8–9. There is no evidence that Sears was in an agency relationship with either Pacific Cycle or Apollo, nor do Plaintiffs allege an agency relationship was present. Because there is no agency relationship between any of the parties, *Chilcote* does not apply. Accordingly, Plaintiffs' argument that Sears' pro rata share should be combined with either Pacific Cycle's or Apollo's share is unpersuasive.

c. The Express Language of the Agreement Defines Four Joint Tortfeasors.

In its Motion, Apollo argues that the Agreement specifically categorizes Pacific Cycle, Sears, Ming Cycle, and Yong Qi as four joint tortfeasors. ECF No. 37 at 4–5. Apollo points to the section of the Agreement titled "Joint Tortfeasor Status" which includes the sentence: "Pacific Cycle, [Sears], Yong Qi (Chang Zhou), and Ming Cycle . . . acknowledge their status as joint tortfeasors." ECF No. 37-1 at 3. Though Plaintiffs acknowledge the Agreement identifies four separate entities, they dispute that if Apollo is found to be a joint tortfeasor it will be the fifth. ECF No. 41 at 3.

In addition to Plaintiffs' arguments based on *Hashmi* and *Chilcote*, which were dismissed *supra*, they argue that Ming Cycle and Yong Qi are not separate entities, meaning they would only account for one pro rata contribution share. ECF No. 3, 7. Plaintiffs base this assertion solely on a statement made during the deposition of Kathy Guerra, who is the Director of Product Safety and Design for Pacific Cycle. *See* ECF No. 41-4 at 4. During Ms. Guerra's December 5, 2019, deposition, in response to a question about her familiarity with Ming Cycle and Yong Qi, she stated she was familiar with the entities. ECF No. 41-2 at 24. When asked if they were the same company, she responded, "Yes. Ming is the American name. Yong Qi is the Chinese name." *Id.* Ms. Guerra did not say anything further regarding the status of these entities, nor did she provide any documentation to support this assertion.

In its Response, Apollo disputes that Ming Cycle and Yong Qi are separate entities. ECF No. 46 at 4. In support of its position, Apollo attached to its Response several excerpts from Ming Cycle and Yong Qi's websites. ECF No. 46-1. Ming Cycle is a Taiwanese company, while Yong Qi is a Chinese company. *Id.* at 3–5. Yong Qi "is the sole proprietorship of Ming Cycle." *Id.* at 4. Although Ming Cycle wholly owns Yong Qi, the two entities are separate corporations. There is no evidence of any veil piercing between the companies, and Plaintiffs do not argue such piercing occurred. Ming Cycle and Yong Qi's separation is supported by the Definition section of the Agreement, which provides: "'Ming Cycle' means Ming Cycle Industrial Co. Ltd. and any parent company, subsidiaries, affiliates, and associated companies. 'Yong Qi (Chang Zhou)' means Yong Qi (Chang Zhou) Bicycle Industrial Co. Ltd. and any parent company, subsidiaries, affiliates, and associated companies." ECF No. 37-1 at 1. The plain language of the Agreement supports Apollo's contention that Ming Cycle and Yong Qi are separate corporate entities, and they will be treated as such. *See, e.g.*, *Kinney Shoe Corp. v. Polan*, 939 F.2d 209, 211 (4th Cir. 1991) ("We have long

recognized that a corporation is an entity, separate and distinct from its officers and stockholders"); *Stovall v. Ritz-Carlton Hotel Co., LLC*, No. AW-06-1552, 2007 WL 9782470, at *2 (D.Md. June 26, 2007) ("Corporate separateness is generally respected unless there is some evidence that the subsidiary is a 'mere instrumentality' of the parent corporation." (citing *Starfish Condo Ass'n v. Yorkridge Serv. Corp.*, 295 Md. 694 (1983))).

Because Ming Cycle and Yong Qi are separate entities, they will each count for one pro rata contribution share. Currently, Pacific Cycle, Sears, Ming Cycle, and Yong Qi are four entities that have already admitted their joint tortfeasor status explicitly in the Agreement. *See* ECF No. 37-1 at 3. If Apollo is ultimately found to be a joint tortfeasor for the underlying action, it will be the fifth joint tortfeasor. Accordingly, Apollo would be liable for not more than twenty percent of Mr. Klein's settlement amount, representing its one-fifth pro rata share. *See Mercy Med. Ctr. v. Julian*, 429 Md. 348, 357 (2012) ("'Pro rata' anticipates equal shares that are determined by dividing the common liability by the number of joint tort-feasors." (citing *Hashmi*, 416 Md. at 719 n.13 (2010))).

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court finds there is no genuine issue of material fact regarding the correct number of potential joint tortfeasors for the underlying action. The Court has considered the parties' motions and responses independently. Accordingly, Apollo's Motion (ECF No. 37) is GRANTED, and Plaintiffs' Cross-Motion (ECF No. 41) is DENIED. A separate Order will follow.

Date: <u>May 11, 2020</u>                                          <u>        /s/        </u>
                                                                                    A. David Copperthite
                                                                                    United States Magistrate Judge